Damien R. Meyer, SBA #021935
ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Tel: (602) 271-9000
drm@eblawyers.com

Karen Hoffman Lent (*pro hac vice* forthcoming)
Michael H. Menitove (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

In Re: Subpoena to Alliance Healthcare Partners, LLC

In Connection with:

*In Re Da Vinci Surgical Robot Antitrust Litigation*,

Plaintiffs,

- against -

Intuitive Surgical, Inc.,

Defendant.

Case No. 2:22-mc-00033 DWL

Pending in the United States District Court for the Northern District of California—Civil Case No. 3:21-CV-03825-VC

**DEFENDANT'S APPLICATION FOR AN ORDER COMPELLING ALLIANCE HEALTHCARE PARTNERS, LLC TO COMPLY WITH DEFENDANT'S SUBPOENA OR, IN THE ALTERNATIVE, TO TRANSFER**

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 45 and LRCiv 16.2(b)(1)(A)(i), defendant Intuitive Surgical, Inc. ("Intuitive") respectfully asks this Court to issue an order enforcing Intuitive's June 3, 2022 subpoena (the "Subpoena") to Alliance Healthcare Partners, LLC ("Alliance") or, in the alternative, to transfer enforcement of the Subpoena to the United States District Court for the Northern District of California (the "Issuing Court").[1]  By the Subpoena, Intuitive seeks documents and communications related to Alliance's relationship with Restore Robotics LLC and Restore Robotics Repairs LLC (collectively, "Restore"), particularly in connection with Alliance's efforts on behalf of Restore before the United States Food and Drug Administration ("FDA").

The information that Intuitive seeks is relevant to the underlying action by two hospitals and a hospital system against Intuitive, in which the plaintiffs challenge Intuitive's use limits on its EndoWrist surgical instruments ("EndoWrists").[2]  Intuitive sets the EndoWrist use limits to conform to the FDA clearance it received for those instruments; any modification of those instruments to extend their use limits requires FDA clearance pursuant to Section 510(k) of the Food, Drug and Cosmetic Act ("510(k) clearance"). Generally speaking, Section 510(k) requires medical device manufacturers to obtain FDA clearance to commercially market any new or modified medical device.

The plaintiffs claim that the EndoWrist use limits are arbitrary and could be extended by independent robot repair companies ("IRRCs"), including Restore and others, without 510(k) clearance and without compromising the instruments' safety.  Restore has retained Alliance to assist Restore to obtain 510(k) clearance for technology that Restore allegedly intends to deploy to extend use limits for a particular type of EndoWrist, and Intuitive seeks information from Alliance primarily related to its effort on behalf of Restore to obtain such 510(k) clearance from the FDA.

Intuitive makes this application because, although the Subpoena was duly issued and

---

[1] The Subpoena is attached hereto as Exhibit 1.
[2] The plaintiffs purport to represent a putative class of entities that purchased or leased Intuitive's da Vinci Surgical Systems.

1

properly served on Alliance on June 3, 2022, Alliance has refused to comply fully with the Subpoena, principally on the ground that its documents are confidential and that the relevance of the information sought does not outweigh the burden on Alliance to produce it. Because the Issuing Court has issued a protective order in the underlying action to maintain the confidentiality of discovery materials, and because the Subpoena seeks a very narrow, discrete set of documents containing information that is necessary to disprove an element of the plaintiffs' case in the underlying action, this Court should grant Intuitive's application and order Alliance to comply with the Subpoena. Alternatively, this Court may transfer Intuitive's application to the Issuing Court. Transferring this application to the Issuing Court would conserve judicial resources, would avoid the risk of inconsistent rulings, and would not unduly burden Alliance.

## II. BACKGROUND

### A. The Underlying Action

Intuitive is a pioneer in surgical robotics that developed and now manufactures and markets the world-renowned da Vinci Surgical Systems and the EndoWrists that are necessary to perform surgery using those systems. Intuitive's da Vinci systems and EndoWrists, which offer the benefits of minimally invasive surgery to patients around the world, were developed through time- and capital-intensive processes that included rigorous testing to maximize the products' safety and reliability. The extensive testing results were submitted to and reviewed by the FDA in connection with Intuitive's application for, and receipt of, 510(k) clearance to market its da Vinci systems and EndoWrists. Based on that testing, Intuitive determined, and the FDA has agreed, that individual EndoWrists should be subject to use limits—generally ten uses—to ensure patient safety. Intuitive has taken steps to ensure those use limits are followed, including by designing EndoWrists with memory chips (i.e., "use counters") to disable the instruments when they reach their validated number of uses, as indicated on the labeling required and cleared by the FDA.

For similar safety reasons, Intuitive has entered into service agreements with purchasers and lessees of da Vinci systems that prohibit the customers from allowing

unauthorized third parties to service the da Vinci system or EndoWrists. These agreements prevent "repairs" by IRRCs, like Restore and others, that involve adulteration of Intuitive products, putting patients at risk and threatening Intuitive's reputation and business. In one such "repair," for instance, intended to bypass EndoWrist use limits, IRRCs break open the outer casing of the EndoWrist and add a computer chip that renders the use counter inoperable. No such third-party "repair" process has been cleared by the FDA.

The plaintiff hospitals in the underlying action are Intuitive customers that allege that Intuitive's use limits and the contractual provisions preventing IRRCs from "repairing" EndoWrists (i.e., overriding their use limits) are part of an anticompetitive scheme to inhibit competition in the purported "aftermarket" for "repair" and replacement of EndoWrists, in violation of federal antitrust laws. Plaintiffs challenge as pretextual Intuitive's safety concerns and insistence that any modification of EndoWrists to extend their use limits requires 510(k) clearance from the FDA. According to Plaintiffs, "EndoWrists could be used for dozens—and in some cases over 100—procedures, if inspected and repaired as needed between surgeries." Dkt. No. 52, Consolidated Am. Class Action Compl. ¶ 109, *In re da Vinci Surgical Robot Antitrust Litig.*, No. 3:21-CV-03825-VC (N.D. Cal. Sept. 10, 2021).

**B.    The Subpoena to Alliance**

The underlying action by the plaintiff hospitals is one of several lawsuits against Intuitive challenging its prohibition on the extension of EndoWrist use limits. In district courts in Florida, two IRRCs—Rebotix Repair LLC ("Rebotix") and Restore—brought similar claims, alleging that Intuitive's contracts with hospitals and other healthcare providers have prevented them from "repairing" EndoWrists. *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-02274-VMC-TGW (M.D. Fla.); *Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF (N.D. Fla.). In those cases, Rebotix and Restore have contended that they do not need FDA clearance to extend EndoWrist use limits. However, Intuitive learned that FDA representatives informed Rebotix and Restore that they believe that 510(k) clearance is required in order to extend EndoWrist use limits.

Restore retained Alliance to assist it in obtaining 510(k) clearance from the FDA. In February 2021, Alliance (acting on Restore's behalf) filed an application—through Alliance's affiliate, Iconocare Health Solutions—with the FDA for 510(k) clearance of Restore's technology used to extend use limits for a particular EndoWrist by an additional ten uses. On April 1, 2021, in the *Restore* action, Intuitive served a third-party subpoena on Alliance seeking documents and information related to Alliance's efforts before the FDA on behalf of Restore. Alliance responded to that subpoena, producing approximately 1,700 documents dated between 2019 and April 1, 2021, the date of the subpoena. Pursuant to the protective order in *Restore*, Alliance produced these documents on the condition that they would be used solely in the *Restore* action and not for any other purpose.

More than sixteen months have transpired since the April 1, 2021 cutoff for Alliance's production of documents responsive to the *Restore* subpoena, during which time Alliance has continued to attempt to obtain 510(k) clearance from the FDA on behalf of Restore. Because the documents produced by Alliance in *Restore* could not be used in the underlying action in this case, and because more than a year has passed since Alliance complied with the *Restore* subpoena, Intuitive served the Subpoena on Alliance on June 3, 2022. The Subpoena seeks the documents produced in response to the *Restore* subpoena so that they can be used in the underlying California action, as well as any similar documents created since Alliance's compliance with the *Restore* subpoena related to its efforts on behalf of Restore to obtain 510(k) clearance. In a letter dated June 16, 2022, Alliance objected to the Subpoena on a number of grounds, including confidentiality and undue burden. (Ex. 2.)

The parties have met telephonically several times to confer about the Subpoena and Alliance's objections to it. Following those conferences, Alliance has agreed to permit the parties in the underlying California case to use the documents that Alliance produced in compliance with the *Restore* subpoena. Alliance also produced an email chain—ranging from October 1, 2021 to June 30, 2022—with correspondence between Alliance personnel and FDA representatives. (Ex. 3.) But the email chain is clearly incomplete, as it omits

4

referenced attachments. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ Alliance's counsel also stated that he could not represent that the produced email chain constitutes the entirety of the correspondence between Alliance and the FDA during the nine-month period from October 2021 to June 2022. (Ex. 4, Declaration of Michael H. Menitove in Supp. of Mot. to Compel ("Menitove Decl.") ¶ 5.) Moreover, there is a six-month gap between the October 1, 2021 beginning of this email chain and the April 1, 2021 cutoff of Alliance's production in response to the *Restore* subpoena.

Alliance continues to object to producing all other responsive documents post-dating April 1, 2021, including: any other communications between Alliance and the FDA, as well as the attachments to the incomplete correspondence that was produced; all of Alliance's internal documents; and all of its communications with Restore. The purported grounds for Alliance's objections are that the documents are confidential and that the relevance of the requested information does not outweigh the burden to Alliance of having to conduct what it calls a "second search" for documents related to its efforts to obtain FDA clearance on Restore's behalf.

### III.   LEGAL STANDARDS

#### A.   Legal Standard for Ordering Compliance With a Subpoena

Federal Rule of Civil Procedure 45 "obligates the nonparty to [comply with a subpoena] at pain of being held in contempt." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018). Under that rule, "[t]he court 'may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.'" *Id.* (quoting Fed. R. Civ. P. 45(g)). "Even though subpoenas are issued by attorneys, they are issued on behalf of the district court and should be treated as orders of the district court." *Martinez v. City of Avondale*, No. CV-12-1837-PHX-LOA, 2013 WL 5705291, at *3 (D. Ariz. Oct. 18, 2013). Thus, "[a] subpoena duces tecum is itself a court

order, noncompliance with which may warrant contempt sanctions." *Id.* (quoting *Fid. Nat'l Fin., Inc. v. Friedman*, No. CIV 03-1222 PHX RCB, 2007 WL 446134, at *4 (D. Ariz. Feb. 7, 2007)).

Rules 26(b) and 45 govern the scope of permissible discovery through a third-party subpoena. *Adams v. Symetra Life Ins. Co.*, No. CV-18-00378-TUC-JGZ (LAB), 2020 WL 6469949, at *3 (D. Ariz. Nov. 3, 2020); *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, Nos. 16-mc-80062-JSC, 16-mc-80076-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016). "The scope of discovery under a Rule 45 subpoena to non-parties is the same as that permitted under Rule 26." *Berwick v. Hartford Fire Ins. Co.*, No. MC 12-00055-PHX-FJM, 2012 WL 2856117, at *1 (D. Ariz. July 11, 2012) (citation omitted). Under Rule 26(b)(1), a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**B.  Legal Standard for Transferring Enforcement to the Issuing Court**

Rule 45 also provides that when "the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if . . . the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). A transfer "may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Glob. Agility Sols., Inc. v. Barker*, 1:20-MC-0314-RP-AWA, 2020 WL 2494625, at *1 (W.D. Tex. May 14, 2020) (citation omitted). In deciding whether to transfer enforcement of a subpoena to the issuing court, courts consider "the burden on the party responding to the subpoena in the event of a transfer," as well as "factors such as judicial economy, docket management, and the risk of inconsistent rulings." *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-0708-RFB-NJK,

2014 WL 4079555, at *6 (D. Nev. Aug. 15, 2014) (collecting cases).

## IV. ARGUMENT

This Court should order Alliance to comply with the Subpoena. The information sought is clearly relevant to the underlying action, and Alliance's primary objection—that the information is confidential—is baseless in light of the protective order entered in the underlying action. Moreover, Alliance has not demonstrated that compliance with the narrowly tailored request for documents created during the last sixteen months and related to Alliance's efforts on behalf of Restore to obtain 510(k) clearance is unduly burdensome or oppressive. In the alternative, this Court should grant Intuitive's request to transfer enforcement to the United States District Court for the Northern District of California.

### A. The Court Should Order Compliance With Intuitive's Subpoena

#### 1. The Requested Discovery Is Relevant and Not Available From Plaintiffs

Relevance under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "[T]he test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34." *Aquastar Pool Prod. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257-PHX-DWL, 2019 WL 250429, at *2 (D. Ariz. Jan. 17, 2019).

The information sought in the Subpoena is clearly relevant to the issues in the underlying action. The plaintiff hospitals argue that IRRCs, including Restore, should be permitted to override EndoWrists' use counters and extend the number of times that the instruments may be used without having received 510(k) clearance from the FDA. Intuitive asserts that extending EndoWrist uses beyond their specified limits requires 510(k) clearance and is unlawful—and unsafe—without that clearance. Documents related to Alliance's efforts to assist Restore to obtain 510(k) clearance are certainly relevant to that disputed issue. Intuitive expects those documents to show that 510(k) clearance is indeed

7

required before an IRRC may lawfully extend EndoWrist use limits.

Moreover, given the length of time that has passed since Alliance filed the application for 510(k) clearance in February 2021, Intuitive expects Alliance's documents to evidence the FDA's patient safety concerns regarding the extension of EndoWrist use limits and how Alliance has chosen to address those concerns. In this regard, testing data submitted in connection with the 510(k) application would be relevant to analyzing whether IRRC "repairs" actually result in EndoWrists being as safe as the new instruments that Intuitive sells (as the plaintiff hospitals allege). Intuitive also expects that Alliance's documents, including its internal documents and communications with Restore, regarding its long-standing effort to obtain FDA clearance for a mere 10 additional EndoWrist uses will cast significant doubt on the plaintiff hospitals' claim that EndoWrists could be used 100 or more times following inspection and "repairs" by IRRCs.

None of this information regarding Alliance's efforts to obtain FDA clearance on behalf of Restore is available from the plaintiff hospitals in the underlying action. Alliance's documents are therefore highly relevant to the issues in the underlying action, and their production should be compelled.

### 2. The Protective Order in the Underlying Action Will Preserve Confidentiality of Alliance's Information

The Issuing Court has issued a protective order in the underlying action that permits documents produced in discovery to be designated by the producing party as "Confidential" or "Highly Confidential—Attorneys Eyes Only." (Ex. 5.) Under this protective order, Alliance may designate its confidential documents as "Highly Confidential—Attorneys' Eyes Only," and no Intuitive personnel will be given access to those documents. These designations are the same designations as those set forth in the protective order under which Alliance produced documents in Florida. The protective order in the underlying action is clearly sufficient to protect Alliance's interest in confidentiality, which should not prevent compliance with the Subpoena. *See, e.g., Heard v. Costco Wholesale Corp.*, No. 19-cv-00673-RFB-DJA, 2020 WL 515841, at *2 (D. Nev. Jan. 31, 2020) (any "privacy or

confidentiality objection is easily resolved by the parties submitting a stipulated protective order"); *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (denying motion to quash subpoena on grounds that compliance would require disclosure of confidential material and noting "confidentiality issues can be addressed by a protective order").

Alliance cannot seriously object to compliance on confidentiality grounds because it has already agreed to produce documents for the period before April 1, 2021 (and produced the incomplete email chain with FDA correspondence from October 2021 to June 2022), subject to the protective order in the underlying action. The pre-April 1, 2021 documents were previously produced in the *Restore* matter in Florida under the terms of the protective order in that case. In conferences among counsel for Intuitive, the plaintiff hospitals, and Alliance related to the Subpoena, Alliance agreed to permit those documents to be produced for use by the parties in the underlying action, subject to the protective order in the underlying action. (Menitove Decl. ¶ 4.) Additional documents created after April 1, 2021 and produced in compliance with the Subpoena can receive the same confidential treatment under the protective order in the underlying action.

Alliance's failure to identify any specific issue with the protective order issued in the underlying action that would purportedly not address its confidentiality concerns confirms that its claimed confidentiality concern is feigned. If Alliance had identified particular provisions about which it was concerned, Intuitive would have met and conferred with Alliance to attempt to reach an agreement on a protective order specific to Alliance's productions. Alliance's objection on the ground of confidentiality should, therefore, not prevent its compliance with the Subpoena.

        **3.    Alliance Cannot Meet Its Burden To Establish That Compliance Would Be Unduly Burdensome**

The burden of showing that compliance with a third-party subpoena "is unreasonable and oppressive is upon the party to whom it is directed." *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966). In weighing the burden on a subpoenaed party against the relevance of the requested documents, courts consider "the breadth of the

9

document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Aquastar*, 2019 WL 250429, at *3 (citation omitted).

Here, the breadth of the document request is targeted and narrow, the time period covered by the request is a short sixteen months, and the documents have been described with reasonable particularity to permit Alliance to know exactly what is requested. Specifically, the Subpoena seeks documents created since April 1, 2021—of the kind Alliance has already produced in the *Restore* action for the period before April 1, 2021—related to Alliance's efforts on behalf of Restore to obtain 510(k) clearance to extend EndoWrist use limits. Alliance presumably knows exactly which of its employees have been involved in those efforts and has offered no basis to find that the search for the requested documents would be burdensome. Indeed, when Intuitive's counsel conferred with Alliance's counsel about the Subpoena, Alliance's counsel conceded that Alliance had not assessed the extent of any compliance burden. (Menitove Decl. ¶ 7.) Thus, Alliance's proof of its purported burden is no more than the *ipse dixit* of its counsel. In these circumstances, the Subpoena should be enforced, and Alliance should be compelled to comply. *See, e.g., FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 2187021, at *4 (D. Ariz. May 28, 2021) (granting motion to compel; burden on subpoenaed third parties was "not likely to be significant" where, *inter alia*, third parties had been aware of the subpoena for several months "and should not have difficulty determining where to search [and] which of their agents to enlist in the effort"). Because Alliance's prior production, covering a period of more than two years, totaled only 1,700 documents, the burden of updating that production for a period of just sixteen months would be minimal.

**B.   In the Alternative, the Court Should Transfer Enforcement of the Subpoena to the Issuing Court**

If this Court were not inclined to issue an order compelling Alliance to comply with the Subpoena, Intuitive seeks in the alternative an order transferring enforcement of the Subpoena to the Issuing Court—the United States District Court for the Northern District of

California. Such a transfer is warranted under the factors that courts typically consider when deciding whether to order transfer of an application to compel compliance with a third-party subpoena. *See Agincourt*, 2014 WL 4079555, at *6.

### 1. Transfer Would Promote Judicial Efficiency

The Issuing Court is uniquely situated to decide issues concerning the relevance of the information that Intuitive seeks, given its familiarity with the underlying action. As the Issuing Court, the district court in the Northern District of California may resolve other discovery motions in this case and is already familiar with the factual circumstances of the underlying dispute. *See, e.g., OrthoAccel Techs. Inc. v. Propel Orthodontics LLC*, No. MC-16-00071-PHX-JJT, 2016 WL 6093367, at *1-2 (D. Ariz. Oct. 19, 2016) (granting transfer where "the disputes require consideration and interpretation of Orders issued by the underlying court," and the issuing court "has an understanding of the factual predicates that underlie the information sought by the subpoena"). Consequently, the Issuing Court is "in a better position to rule on the . . . motion . . . due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *In re UBS Fin. Servs., Inc. of P.R. Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) (first two alterations in original) (citation omitted).

In addition, the Issuing Court is best positioned to consider the discovery already obtained by Intuitive from the plaintiff hospitals to confirm that the information sought from Alliance is not duplicative. *See, e.g., Venus Med. Inc. v. Skin Cancer & Cosm. Dermatology Ctr. PC*, No. 15-00062MC, 2016 WL 159952, at *3 (D. Ariz. Jan. 14, 2016) (finding judicial economy "weighs in favor of transfer" where the issuing court "has knowledge as to whether [the party seeking to enforce a subpoena] has already obtained the same discovery from other [parties]" and where "similar issues have already been briefed and are ripe for review").

Moreover, transferring enforcement of the Subpoena ensures that the Issuing Court oversees all outstanding disputes regarding the confidentiality, relevance, and discoverability of information concerning the need for IRRCs to obtain 510(k) clearance

before they can modify EndoWrists to override their use limits. As it manages the discovery schedule in the underlying action pursuant to a protective order that it issued, the Issuing Court is in the unique position to balance timely enforcement of the Subpoena, ensure compliance with its own schedule (or make appropriate modifications to that schedule), and take account of Alliance's interest in confidentiality and the avoidance of any burden accompanying transfer. *See, e.g.*, *In re Kia Motors Am., Inc.*, No. SACV 14-315 JLS (RNBx), 2014 WL 2118897, at *1 (C.D. Cal. Mar. 6, 2014 (finding transfer warranted where a discovery cut-off deadline was approaching and the motion to compel was "best decided by the court with control over the discovery cut-off deadline").

### 2. Transfer Would Avoid Inconsistent Rulings

Transfer would also avoid the risk of inconsistent rulings in different judicial districts. Intuitive is in the process of serving a subpoena on Alliance's client, Restore, in the Northern District of Florida, seeking similar information for use in the underlying action. Because Alliance has been representing Restore before the FDA, it is likely that Alliance and Restore possess complementary, rather than identical, documents. For that reason, Intuitive has served subpoenas on each of them. The pendency of multiple subpoenas in multiple district courts runs the obvious risk of inconsistent decisions. Transfer to the Issuing Court would minimize that risk.

### 3. Transfer Would Not Unduly Burden Alliance

Transferring enforcement of the Subpoena to the Northern District of California would not unduly burden Alliance. Courts have held that transferring subpoena enforcement matters "to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, does not rise to the level of unfair prejudice." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 45 (D.D.C. 2014). In addition, the Advisory Committee Notes to Rule 45 suggest that any travel-related burdens may be minimized by "encouraging transferee courts to allow appearances to be made telephonically in the event that a hearing is deemed to be necessary." *Agincourt*, 2014 WL 4079555, at *8; *see also Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D.

426, 430 (N.D. Cal. 2014) (Advisory Committee "encourages judges" to allow telephonic communications to minimize travel burden); Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment ("If the motion is transferred, judges are encouraged to permit telecommunications methods to minimalize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending."). At the present time, the Issuing Court holds most hearings by Zoom (*see* https://apps.cand.uscourts.gov/CEO/cfd.aspx?7150#Notes), and there does not appear to be any reason that a hearing on this application could not be held in that same way.

## V.  CONCLUSION

For the foregoing reasons, Intuitive respectfully requests that the Court grant its application for an order compelling Alliance to comply with Intuitive's Subpoena or, in the alternative, transfer enforcement of the Subpoena to the United States District Court for the Northern District of California. A proposed order is attached hereto.

Dated: August 26, 2022

Respectfully Submitted,

By: /s/ *Damien R. Meyer*
Damien R. Meyer, SBA #021935
ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Tel: (602) 271-9000
drm@eblawyers.com

Karen Hoffman Lent (*pro hac vice* forthcoming)
Michael H. Menitove (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

ATTORNEYS FOR DEFENDANT
INTUITIVE SURGICAL, INC.

**STATEMENT OF COMPLIANCE WITH LRCiv 7.2(j)**

Pursuant to LRCiv 7.2(j), I hereby certify that after personal consultation with counsel for Alliance Healthcare Partners, LLC, and sincere efforts to do so, counsel have been unable to satisfactorily resolve the matter.

/s/   *Damien R. Meyer*
Damien R. Meyer
Attorney for Defendant
Intuitive Surgical, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, I served or caused to be served the foregoing document by email on counsel identified on the Service List below.

/s/   *Damien R. Meyer*
Damien R. Meyer
Attorney for Defendant
Intuitive Surgical, Inc.

**SERVICE LIST**

| Attorney Name | Email Address |
|---|---|
| Bonny E. Sweeney | bsweeney@hausfeld.com |
| Brent William Landau | blandau@hausfeldllp.com |
| Gary Ivan Smith, Jr. | gsmith@hausfeld.com |
| Icee N. Etheridge | ietheridge@srkattorneys.com |
| Jeannine M Kenney | jkenney@hausfeld.com |
| Jeffrey J. Corrigan | jcorrigan@srkattorneys.com |
| Jeffrey Lawrence Spector | jspector@srkattorneys.com |
| John Elliott Sindoni | jsindoni@bonizack.com |
| Joshua D. Snyder | jsnyder@bonizack.com |
| Kevin Bruce Love | klove@cridenlove.com |
| Michael J. Boni | mboni@bonizack.com |
| Seth R. Gassman | sgassman@hausfeld.com |
| Christopher J Bateman | cbateman@cohenmilstein.com |
| Daniel McCuaig | DMcCuaig@cohenmilstein.com |
| Heather T. Rankie | hrankie@zelle.com |
| James S. Dugan | jdugan@zelle.com |
| Jennifer Duncan Hackett | jhackett@zelle.com |
| Judith A. Zahid | jzahid@zelle.com |
| Manuel Juan Dominguez | jdominguez@cohenmilstein.com |
| Jeffrey L. Berhold | jeff@berhold.com |