Damien R. Meyer, SBA #021935
**ENGELMAN BERGER, P.C.**
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Tel: (602) 271-9000
drm@eblawyers.com

Karen Hoffman Lent (*admitted pro hac vice*)
Michael H. Menitove (*admitted pro hac vice*)
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

|   |   |
|---|---|
| In Re: Subpoena to Alliance Healthcare Partners, LLC<br><br>In Connection with:<br><br>*In Re Da Vinci Surgical Robot Antitrust Litigation*,<br><br>                                Plaintiffs,<br><br>             - against -<br><br>Intuitive Surgical, Inc.,<br><br>                                Defendant. | Case No. 2:22-mc-00033-DWL<br>_____<br><br>Pending in the United States District Court for the Northern District of California—Civil Case No. 3:21-CV-03825-VC<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR AN ORDER COMPELLING ALLIANCE HEALTHCARE PARTNERS, LLC TO COMPLY WITH DEFENDANT'S SUBPOENA OR, IN THE ALTERNATIVE, TO TRANSFER** |

# I. INTRODUCTION

Intuitive respectfully submits this reply memorandum in support of its application for an order enforcing the Subpoena to Alliance or, in the alternative, to transfer to the United States District Court for the Northern District of California.[1]

In its application, Intuitive demonstrated that an order compelling Alliance to comply with the Subpoena is warranted and should be issued. ***First***, Intuitive established that the documents it seeks are relevant—***indeed, central***—to critical issues in the underlying case, including whether entities like Restore may lawfully extend EndoWrist use limits without FDA clearance and whether EndoWrists subjected to those entities' so-called "repair" processes are safe. (App. at 7-8.) ***Second***, Intuitive demonstrated that the protective order in the underlying action will protect any confidentiality interest that Alliance has in documents responsive to the Subpoena. (*Id.* at 8-9.) ***Third***, Intuitive showed that Alliance failed to meet its burden of establishing that compliance would be unduly burdensome. (*Id.* at 9-10.) ***Fourth***, Intuitive demonstrated that, if this Court were not inclined to wade into the discovery issues of the underlying case, it could transfer the application to the Issuing Court where the underlying case is pending. (*Id.* at 10-13.)

In its opposition, Alliance provides no basis to deny Intuitive's application or to excuse Alliance's failure to comply with a duly issued third-party subpoena. Alliance does not dispute the relevance of the documents sought by the Subpoena, but argues that those documents are not "'essential'" to the underlying case. (Opp.[2] at 7.) Alliance misstates the legal standard and understates the significance of the requested discovery. While Alliance portrays Restore as merely "one of many [IRRCs]" seeking to extend EndoWrist use limits (*id.* at 5), Restore and Rebotix Repair LLC are the only two IRRCs that purport to have developed technology to circumvent EndoWrist use limits. Moreover, Restore is ***the only***

---

[1] This reply memorandum uses the same terms defined in Defendant's Application for an Order Compelling Alliance Healthcare Partners, LLC to Comply With Defendant's Subpoena or, in the Alternative, to Transfer (filed August 5, 2022) ("App.").

[2] Alliance Healthcare Partners LLC's Opposition to Defendant's Application for an Order Compelling Alliance Healthcare Partners, LLC to Comply With Defendant's Subpoena or, in the Alternative, to Transfer (filed August 19, 2022) (ECF No. 10) ("Opp.").

1

*IRRC* seeking 510(k) clearance, and Alliance is prosecuting that application before the FDA on Restore's behalf. As a result, Alliance's documents are uniquely relevant to the key questions in the underlying case of whether (1) IRRCs like Restore must obtain 510(k) clearance from the FDA to lawfully extend EndoWrist use limits and (2) IRRC "repairs" actually result in EndoWrists being as safe as the new instruments that Intuitive sells (as the plaintiff hospitals allege).

        Alliance raises confidentiality objections to compliance, but Alliance does not even mention the protective order in the underlying action, let alone suggest any reason why that protective order would be inadequate to preserve the confidentiality of Alliance's documents and information. In fact, Alliance already produced documents (i.e., the 1,706 documents Alliance produced in response to Intuitive's subpoena in the *Restore*[3] case and an incomplete email chain between Alliance and the FDA from October 2021 to June 2022) in the underlying action pursuant to that protective order. The existence of that protective order, with its provisions for designating documents for outside counsel's eyes only, eliminates any legitimate objection based on the confidentiality of responsive documents.

        In addition, Alliance has not provided any basis to find that compliance would be unduly burdensome. Its repeated assertion that it is not a party to the underlying action (Opp. at 1, 5, 6) does not excuse it from compliance with a third-party subpoena. Obviously, all recipients of third-party subpoenas are not parties to the underlying action; otherwise, they would be served with party discovery. And while Alliance complains that it is small company that expended attorneys' fees to respond to Intuitive's subpoenas in the *Restore* case, these complaints provide no measure of any burden to comply with this Subpoena—let alone evidence showing that compliance would impose an undue burden.

        Finally, Alliance's opposition to Intuitive's alternative proposal to transfer the application to the Issuing Court is unavailing. Alliance argues that it and three other third parties located in the Phoenix area—all of which are represented by Alliance's counsel— would need to find local counsel in San Francisco (*id.* at 8), but lawyers are plentiful in the

---

[3]   *Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF (N.D. Fla.) ("*Restore*").

2

San Francisco Bay Area, and, because the briefing on Intuitive's application is complete, there would seem to be very little for a local lawyer to do besides file *pro hac vice* papers for the admission of Alliance's national counsel—hardly an undue burden.

## II.     ARGUMENT

### A.     The Court Should Order Compliance With the Subpoena

#### 1.     Alliance Concedes the Relevance of the Materials Sought

As Intuitive previously demonstrated, "[t]he test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34." *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257-PHX-DWL, 2019 WL 250429, at *2 (D. Ariz. Jan. 17, 2019). Relevance under Rules 26 and 34 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Williams-Sonoma, Inc. v. U.S. District Court (Orrick)*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Indeed, as this Court recently observed, "some courts have suggested that relevance should be construed even more broadly than usual when, as here, the judge overseeing the litigation over the subpoena isn't handling the underlying case." *Aquastar*, 2019 WL 250429, at *2 ("[C]ourts with jurisdiction over ancillary or discovery matters should be cautious in determining what is relevant evidence to the main action . . . because of their unfamiliarity with the main action. Where there is doubt over relevance, . . . the court should be permissive.") (quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)) (alterations in original).

Alliance does not contest that the Subpoena seeks documents that are relevant to critical issues in the underlying action: whether IRRCs like Restore must obtain 510(k) clearance from the FDA to lawfully extend EndoWrist use limits and whether EndoWrists subjected to IRRC "repairs" are safe. (App. at 7-8.) Alliance's work for Restore involves precisely those questions, the answers to which are central to the underlying case and the reason why Intuitive served this Rule 45 subpoena on Alliance. In fact, as Alliance asserts

3

(Opp. at 1), it complied with a similar subpoena in the *Restore* case and produced documents—in both *Restore* and the underlying action here—relating to its efforts on Restore's behalf before the FDA until April 1, 2021.  Given that Alliance's efforts have continued since April 1, 2021 and that the FDA has not yet granted 510(k) clearance (*id.*), it cannot be disputed that Intuitive's request for Alliance to update its prior production with documents related to its efforts after April 1, 2021, is highly relevant.

Alliance misses the mark with its argument that its documents are not "'essential to a judicial determination' in this case" because (i) there are other IRRCs from which information about the so-called EndoWrist "aftermarket" could be obtained, and (ii) Intuitive could itself assess the feasibility or cost of developing technology to extend EndoWrist use limits.  (Opp. at 6-7.)  As an initial matter, Alliance misstates the legal standard because Intuitive does not need to demonstrate that Alliance's documents are "essential" to the underlying litigation.  Even in disputes involving confidential documents, courts "'weigh the burden [of production] to the subpoenaed party against the value of the information to the serving party.'" *Aquastar*, 2019 WL 250429, at *3 (citation omitted). Regardless of whether requested information "contain[s] confidential information and/or trade secrets," if "the balancing test identified above cuts in [the moving party's] favor," the subpoenaed party must produce the requested documents.  *Id.* at *3-4 (balance weighed in movant's favor where, as here, the requested documents were relevant and the burden was "minimal given the presence of a protective order").

Moreover, and in any event, Alliance's documents ***are essential*** to the judicial determination of key issues in the underlying case.  Restore, through Alliance, is ***the only IRRC*** seeking 510(k) clearance to extend EndoWrist use limits, and—in connection with that 510(k) application—Alliance is seeking to persuade the FDA that Restore's technology is safe.  Therefore, Alliance's documents regarding its efforts before the FDA are essential to a judicial determination of the foundational questions in the underlying case of whether (1) 510(k) clearance is needed to lawfully extend EndoWrist use limits and (2) EndoWrists that have been "repaired" by Restore or other IRRCs are safe.  The Subpoena does not

4

request documents that Intuitive already has or could readily create on its own, or documents available from the plaintiff hospitals or any other source in the underlying case; it requests documents uniquely in Alliance's possession.

### 2. Alliance Does Not Provide Any Basis To Suggest That the Protective Order in the Underlying Action Is Inadequate or That The Subpoena Is Otherwise Improper

Intuitive has explained (App. at 8-9) that the Issuing Court entered a protective order in the underlying action that would permit Alliance to designate its documents as "Highly Confidential—Attorneys Eyes Only," preventing Intuitive personnel from accessing those documents.  That protective order is clearly sufficient to protect Alliance's interest in confidentiality.  *See, e.g.*, *Aquastar*, 2019 WL 250429, at *4 (holding that subpoenaed third party "is not entitled to withhold [responsive] materials from Aquastar because a protective order is already in place that will prevent Aquastar from misusing the information"); *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (denying motion to quash subpoena on grounds that compliance would require disclosure of confidential material and noting "confidentiality issues can be addressed by a protective order").

Alliance does not even mention the protective order and thus makes no argument that it would be inadequate to preserve the confidentiality of Alliance's "highly sensitive research and development information." (Opp. at 5.)  Alliance simply asserts that its documents contain confidential information and speculates that Intuitive might use the information for an improper purpose, like seeking to block Restore's technology or interfering with Restore's effort to obtain 510(k) clearance. (*Id.* at 6.)  Such baseless speculation cannot excuse Alliance's failure to comply with the Subpoena.  The designation of Alliance's documents as "Highly Confidential—Attorneys Eyes Only" would fully resolve its purported concerns about misuse of the information by Intuitive's personnel. Indeed, Alliance already produced documents for the period before April 1, 2021 (and the incomplete email chain with FDA correspondence from October 2021 to June 2022), subject to the protective order in the underlying action.  Alliance could produce its post-

5

April 1, 2021 documents responsive to the Subpoena pursuant to the confidentiality provisions of the same protective order.

In addition, there is no basis for Alliance's contention that the Subpoena, which was properly issued as part of the ongoing discovery in the underlying action, is somehow improper because discovery closed in the *Restore* litigation. (*Id.* at 7.) In fact, Intuitive has moved to reopen discovery in *Restore* based, in part, on Restore's production of the incomplete email chain between Alliance and the FDA related to Alliance's efforts to obtain 510(k) clearance between October 2021 and June 2022;[4] so, Intuitive plainly is not using this Subpoena to circumvent the discovery deadline in *Restore*. If anything, the record illustrates that Alliance and Restore are attempting to hide critical facts from Intuitive through any means possible.

### 3.  Alliance Has Not Met Its Obligation To Establish That Compliance Would Be Unduly Burdensome

Intuitive previously demonstrated (App. at 10) that the burden of compliance with the Subpoena will likely be minimal, given that the document requests are targeted and narrow, the time period covered by the requests is a short sixteen months, and the documents have been described with reasonable particularity to permit Alliance to know exactly what is requested. Specifically, the Subpoena seeks documents created since April 1, 2021—of the kind Alliance has already produced in the *Restore* action for the period before April 1, 2021—related to Alliance's ongoing efforts on Restore's behalf to obtain 510(k) clearance to extend EndoWrist use limits. As Intuitive previously observed, Alliance presumably knows exactly which of its employees have been involved in those efforts and has offered no basis to conclude that the search for the requested documents would be burdensome.

Alliance's contentions that it is a "small local healthcare company" with "less than $2 million in annual sales" and that it spent $50,000 in attorneys' fees responding to

---

[4] *See* Intuitive Surgical, Inc.'s Motion for Limited Reopening of Discovery, *Restore Robotics LLC, v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF, ECF No. 179 (N.D. Fla. Aug. 12, 2022).

6

Intuitive's document and deposition subpoenas in the *Restore* case (Opp. at 1, 4) do not establish that compliance with this Subpoena would be unduly burdensome. Indeed, Alliance's attorneys' fees to comply with the *Restore* subpoenas are not indicative of the fees that Alliance is likely to incur to comply with this Subpoena because, in *Restore*, Alliance's attorneys prepared for and defended two depositions, in addition to producing 1,706 documents dated between 2019 and April 1, 2021. Alliance does not provide any evidence or estimate as to the expected cost to update its production for a limited time period (of approximately sixteen months), which is likely to be a small fraction of the cost of complying with the document and deposition subpoenas in *Restore*. Simply put, Alliance provides no evidence demonstrating that complying with this Subpoena would impose an undue burden.

Finally, Alliance repeatedly asserts (*id.* at 1-4) that Intuitive is not producing documents post-dating May 2021 in the underlying case. That assertion is plainly false, as Alliance concedes that "Intuitive ***is producing*** its own 510(k) submissions to the present in the class action." (*Id.* at 3 n.3 (emphasis added).) In any event, the scope of Intuitive's productions is disconnected from the issues in this application—i.e., the relevance of the discovery sought from Alliance (which is undisputed) and whether Alliance has shown (which it has not) that complying with the Subpoena would impose an undue burden.

### B. Alliance Has Not Provided Any Reason for This Court To Refrain From Transferring Intuitive's Application To the Issuing Court

Intuitive proposed transfer of the application to the Issuing Court as an appropriate and proper alternative if this Court were disinclined to become involved in the discovery occurring in the underlying action. (App. at 10-13.) After all, the Issuing Court is likely to have the better understanding of the factual background, procedural history, and future scheduling of the underlying action. *See, e.g.*, *OrthoAccel Techs. Inc. v. Propel Orthodontics LLC*, No. MC-16-00071-PHX-JJT, 2016 WL 6093367, at *2 (D. Ariz. Oct. 19, 2016) (granting transfer where "the disputes require consideration and interpretation of Orders issued by the underlying court," and the issuing court "has an understanding of the

7

1 factual predicates that underlie the information sought by the subpoena"). Transfer would promote judicial efficiency, would avoid the possibility of inconsistent discovery rulings, and would not unduly burden Alliance.

Alliance does not dispute Intuitive's articulation of the standard for analyzing transfer. (Opp. at 8.) Alliance simply asserts that it and three other third parties in the Phoenix area—all of which are represented by the same counsel as Alliance—would be burdened by "the expense and inconvenience of securing local counsel" to defend this motion to compel in California. (*Id.*) That "expense and inconvenience" is likely to be minor; it is certainly not an undue burden justifying the denial of transfer if, as noted, this Court were reluctant to involve itself in the discovery process in the underlying action. It would not be difficult for Alliance and its counsel's three other clients to find a single local counsel in the San Francisco Bay Area, where the Issuing Court sits. And given that the briefing on this motion is complete, there would be little for local counsel in San Francisco to do, other than file *pro hac vice* papers for the admission of Alliance's national counsel.

### III.   CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Intuitive's application, the Court should grant Intuitive's application for an order compelling Alliance to comply with Intuitive's Subpoena or, in the alternative, transfer enforcement of the Subpoena to the United States District Court for the Northern District of California.

Dated: August 26, 2022    Respectfully Submitted,

By:   /s/   *Damien R. Meyer*
Damien R. Meyer, SBA #021935
**ENGELMAN BERGER, P.C.**
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
Tel: (602) 271-9000
drm@eblawyers.com

Karen Hoffman Lent (*admitted pro hac vice*)
Michael H. Menitove (*admitted pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

ATTORNEYS FOR DEFENDANT
INTUITIVE SURGICAL, INC.

9

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, I served or caused to be served the foregoing document by email on counsel identified on the Service List below.

          /s/ *Damien R. Meyer*
          Damien R. Meyer
          Attorney for Defendant
          Intuitive Surgical, Inc.

**SERVICE LIST**

| Attorney Name | Email Address |
|---|---|
| Brent William Landau | blandau@hausfeldllp.com |
| Gary Ivan Smith, Jr. | gsmith@hausfeld.com |
| Icee N. Etheridge | ietheridge@srkattorneys.com |
| Jeannine M Kenney | jkenney@hausfeld.com |
| Jeffrey J. Corrigan | jcorrigan@srkattorneys.com |
| Jeffrey Lawrence Spector | jspector@srkattorneys.com |
| John Elliott Sindoni | jsindoni@bonizack.com |
| Joshua D. Snyder | jsnyder@bonizack.com |
| Kevin Bruce Love | klove@cridenlove.com |
| Michael J. Boni | mboni@bonizack.com |
| Seth R. Gassman | sgassman@hausfeld.com |
| Christopher J Bateman | cbateman@cohenmilstein.com |
| Daniel McCuaig | DMcCuaig@cohenmilstein.com |
| Heather T. Rankie | hrankie@zelle.com |
| James S. Dugan | jdugan@zelle.com |
| Jennifer Duncan Hackett | jhackett@zelle.com |
| Judith A. Zahid | jzahid@zelle.com |
| Manuel Juan Dominguez | jdominguez@cohenmilstein.com |
| Jeffrey L. Berhold | jeff@berhold.com |